Hillsborough,
No. 5848.

GARDNER MILLS & a.

*v.*

MANCHESTER & a.

Argued December 3, 1968.
Decided January 31, 1969.

*Bois & Laflamme (Mr. Maurice P. Bois* orally), for the plaintiffs.

*James A. Manning* (by brief and orally), for defendant Nicholas Labanaris.

*J. Francis Roche,* city solicitor, for the city of Manchester, filed no brief.

GRIMES, J. This is an appeal from the granting of a variance allowing Nicholas Labanaris to convert a barn connected to his house, into an eight-room rooming house. After a hearing with a view, the Trial Court made written findings and held that the variance had been improperly granted. The exceptions of the defendants were transferred by *Bownes,* J.

There was no record of the evidence before the board of adjustment, but the evidence before the Trial Court showed that Mr. Labanaris purchased in August 1964 a large house with connecting barn on Hanover Street in Manchester for $17,000. The property was in a generally rundown condition. The area

was zoned as a general residence district in which only one and two-family dwellings were permitted with the right to have up to four lodgers or boarders for each family. He was charged with knowledge of the zoning regulation. *Hermer* v. *Dover,* 106 N. H. 534.

A new zoning ordinance was adopted in January 1965 under which the area in which the Labanaris property was located was zoned as R-2 with substantially the same restrictions as before but only permitted the renting of not more than two rooms to not more than two people within the second degree of kinship.

When he purchased the property, he had a daughter and a son, both unmarried, who planned to live with him and his wife. After purchase, both married but continued to live with their parents with their spouses. However, the husbands soon went into the military service and the defendant Labanaris and his wife were left alone.

In September 1964, about a month after purchase, Labanaris obtained a permit to repair the porches, roof and some windows. In October he obtained another permit to replace an outside wall and build two inside partitions. In November he was refused a permit to convert the property from a two-family to a three-family dwelling. He continued to have work done on the house, including new plaster walls and interior remodeling. It is agreed that much of this inside work did not require permits.

On August 4, 1965, the building commissioner wrote Labanaris that an inspector had seen a sign on his lawn advertising rooms and informed him of the restriction on renting rooms.

In July 1966 he obtained a permit to replace certain windows and garage doors in the barn and to clapboard one side. Without obtaining a permit, and knowing he had no right to do so, he converted the interior of the barn, which at the time of purchase had been partitioned with a kind of wallboard, into eight rooms and a bath for the purpose of renting the rooms. In response to complaints that Labanaris was renting rooms, the premises were inspected and a notice of violation was given on January 20, 1967. Following this, he applied for the variance which is here in question.

The defendant Labanaris contends that the Trial Court substituted its judgment for that of the board of adjustment as to findings on the various requirements for a variance, and in effect

conducted a trial *de novo,* which is no longer open to the plaintiffs. *Sweeney* v. *Dover,* 108 N. H. 307; *Gelinas* v. *Portsmouth,* 97 N. H. 248.

The issue before the Trial Court was a determination whether the action of the board was unreasonable and unlawful. RSA 31:78. In making this determination, the Trial Court properly relied upon the evidence before the Court, there being no record of the evidence before the board. *Sweeney* v. *Dover,* 108 N. H. 307, 309.

The Trial Court by granting plaintiff's request #37 properly found and ruled that the evidence would not support a finding by the board "that the denial of his appeal would result in unnecessary hardship to him . . . . " Not only was Labanaris charged with knowledge of the zoning regulations when he bought the property, but much of the remodeling was done after he had been denied a permit and had been told of the restrictions on renting rooms. This is not the kind of hardship contemplated by the statute. See *Cary* v. *Board of Appeals of Worcester,* 340 Mass. 748; *Misuk* v. *Zoning Board of Appeals,* 138 Conn. 477; *Clark* v. *Board of Zoning Appeals,* 301 N. Y. 86; 58 Am. Jur., Zoning, *s.* 208; 101 C. J. S., Zoning, *s.* 292.

There is nothing in the evidence from which it can be found that there is anything about this property, as distinguished from other property in the area, which makes it unsuitable for permitted uses. We hold that if there is any hardship, it is self-created with knowledge of the restrictions. Such action cannot be made the "fulcrum to lift those limitations" imposed by the ordinance. *Cary* v. *Board of Appeals of Worcester, supra,* 750.

It follows that the Trial Court properly found and ruled that the decision of the board was unreasonable and unlawful (RSA 31:78) as the evidence did not satisfy the requirements of RSA 31:72 III.

*Exceptions overruled.*

All concurred.